May it please the court. Attorney Yofi for the petitioners. Your Honor, this is a fairly straightforward case in my mind. The board affirmed the judge's decision based on that adverse credibility finding and the crux of their decision is that two omissions that they allege undermine the petitioner, the lead case fits squarely within a Ninth Circuit decision in Lye v. Holder. It's a 2014 decision 773 F3rd 966. In that case, the Honorable Court found that omissions could hurt maybe the basis of an adverse credibility finding but are less probative of credibility than direct inconsistencies. And what we have here is there's no material there's no effort to materially alter her facts of the case to establish the claim. Both omissions came on cross-examination. The petitioner did not embellish her claim on direct examination. Later when asked questions on cross, additional information came out. Under the board's decision, applicants could not add details to their claim and that has not been the precedent of this court which has over and over held that the mere omissions of details are not enough to support an adverse credibility finding. And the second omission, Your Honors, which is to testify that a bribe had to be paid by the snakehead to get her to leave the country. Under Lye v. Holder, this is not substantive. She already in her statement indicated that she needed the help of her cousin to escape from China. So she already alluded to the fact that she needed an intermediary to leave. And then she provided additional details and she didn't know the details how the snakehead did it. She just knew they paid a fine and it's just not enough to establish to support the adverse credibility finding these two minor omissions in our view. Let me ask you a question. In Lye, the Ninth Circuit found it significant that the immigration judge did not make, ask a question whether or not the application was complete. Whereas in Zal's case, such a question was asked. Does that make a difference? Do you think it would make a difference? I think it would be more if a case like Zamanov, where the person added huge events, where he said, oh, I was arrested three more times and I was persecuted. And that was his whole claim. When she testified on direct, she was consistent and did not add anything to her claim. And then, so her claim was in fact complete. And then on cross, additional questions came up pertaining to third parties. And so additional information was provided. So yes, although the judge did ask, is your whole claim, is your statement complete? And it was complete. It was just that additional information was provided to other parties. Do you have anything further or do you only say the rest of it? Well, they also denied it based on future fear. They said, even if credible, there is no future fear. And again, we would disagree. If the court finds that the omissions are not enough, these two omissions are not enough to find are not credible, then I would argue that she testified that police came to her house, to her mother's house, and that the police accused her of organizing these So I would argue that there is a 10% future fear. That's all you have to establish in the Ninth Circuit. And if the police believe that she is the organizer of this cult gathering, then I do believe she's established well-founded fear. And I would ask the court to remand for the board to decide, or for the judge to decide, if there is a future fear in her case. Thank you, counsel. And I would reserve the other five minutes. Thank you. May it please the court, I'm Lindsay Donahue on behalf of the Attorney General. Substantial evidence supports the agency's denial of asylum, withholding of removal, and cap protection for three reasons. First, Ms. Swo did not provide credible testimony. Second, in the alternative, even if her testimony were believed, she failed to show a well-founded fear of future persecution. And third, Ms. Swo did not demonstrate a likelihood of torture. Beginning with her credibility, since when, I mean I don't know when this was, inconsistent testimony. And now we've gotten to the point where it seems like one prong of the omission that's supposed to under, to substantiate the adverse credibility decision is something which, if she put in, would have enhanced her claim. I mean, the fact that they were actually in detention, they continued to be in detention up to this point in time, would enhance her claim. It's not like she's omitting something that undermines her claim of asylum. How can that possibly support an adverse credibility decision? Well, details that do serve to enhance someone's claim, when they come out after the fact, may be indicative of some kind of embellishments. In other And here that seems to be the case. In her asylum application, Ms. Swo describes her leaving China in just one sentence. But they were detained at the time she left. And so how is she, I mean, how is she necessarily, at the time she does their asylum application, even to know what's happening? Well, Ms. Swo does not claim that she never knew that they were detained at the time. Well, the government's question was, the DHS attorney said that the detention had lasted four years. Is that right? I believe it was two or three. It was actually four months. When she left. It was four months when she filled that out. Yes, I think it was. But they said that, why didn't you tell us it had lasted four years? And the whole decision's based on the idea that she Well, I think the point that DHS counsel was trying to make was that she never mentioned that they were detained at all. Well, no. They said, why didn't you tell us they had been detained for four years? And that was what it says consistently throughout. And the government was just wrong. It was only four months afterwards. And it seems to me that that undermines the credibility of the entire process in this case. That's a pretty fundamental error, because if she had made an error like that, she'd be strung up by now. But when the government does make that kind of an error, oh, well, it's just doesn't matter that somebody might have said something about them being detained for four years, but didn't think at the time that that was very even know about it then. Well, I think the point DHS counsel was making there was the detainment from the moment of their arrest up until the removal proceeding was that long. No, it was four. It was four months after her statement. They accused her of not mentioning that, which, you know, it seems to me that I don't understand how the government can come in and even ask for an affirmance when it's the premise of its whole credibility finding was just wrong. Well, there is another ground that the agency relied on for adverse credibility, and that is Ms. Sewell's assertion that she had to pay a bribe so that she could leave China. How did she know that that was important? I mean, why? If somebody asked you, did you pay a bribe? Maybe she would have said yes. But why did she think it was important what her aunt or whoever it was who arranged to get her out of China, how she did it? All she cared about was her aunt arranged it for her. Whether her aunt paid a bribe or not was not particularly significant to her. I think the importance of it, Your Honor, is that she said that she had to pay a bribe in order to leave the country or she would have been arrested. That gives it a much greater significance. She did or didn't say that? She said that in her testimony, but not in her asylum application. Well, of course, when you testify and get questioned about things, a lot of details come out. But she said she couldn't just go out. She had to have her aunt or her cousin make some arrangements to get her out. And then when she was questioned about it, she said, you know, they made, they paid a bribe. But that's, you know, how is she supposed to know that that must go in the application? Well, it seems to me that it would be a rather significant portion of her, of her asylum application because it seemed like a fairly dramatic flight from China that she couldn't just leave. She couldn't just have her cousin help her to the airport or in some other way that her cousin or her aunts had to help her by hiring an agency to bribe customers. China is not like the United States. Even in the United States, it's gotten really hard to get, just get on a plane. China is not like the United States. I think that's something that I see immigration judges do all the time. They project what conditions are here onto what they're like in a foreign country. I think she didn't want to be stopped is why they probably paid the bribe. She did yes. But that's not part of the claim for asylum. I think the reason why they found that it was so probative to her credibility is that it does enhance her fear because it goes from her saying that her cousin helped her leave China to her saying that without bribing customs officials, she would have been arrested. And that's enhancing the level of interest that the police had in her and thus strengthening her claim. What she said was that she went into hiding at an elder female cousin's home in Tailing City. Then with her help, we fled to the United States with a valid visa. So the cousin or whoever it was made these arrangements. I don't know, and if you wanted to find out more about it, then you ask her about it. What kind of help was it? But she didn't conceal anything. And to her, the fact that they were coming to arrest her, she had to flee, she hid herself, and she had to get somebody to help her get out. That's what mattered to her. And that's all she put in her original application. Even if the court is not satisfied by the agency's adverse credibility determination, there is one other alternate ground that the agency relied on, and that's a well-founded fear of persecution. Here, Ms. Wo had multiple paths to establish a well-founded fear of persecution. And perhaps most relevant is demonstrating that what she fears rises to the level of persecution. Here, this court's case law seems to require more than just arrest. It requires arrest and some sort of mistreatment or greater threat. For example, in Zalvi Mukhesi, the Anne had a prior history of arrest, detention, abuse and threats, and record evidence of widespread abuse of Falun Gong practitioners, including death. We simply don't have that here. Here, she claims arrest, but never claims to fear harm, or that her co-practitioners of Yiguan Dao were harmed. She never... Didn't she testify that the police threatened her with severe consequences if she returned, because she was a leader of the group? It is unclear what those are, or what she meant by that. Well, severe consequences isn't enough? If the government threatens you with severe consequences, would you like to go back there? That's not a personal choice. Without more, I don't know if I can say that's persecution. And nevertheless, Ms. Wo has also not sided to any case law for the persecution. This was her burden. It was her burden to connect the dots, and she simply hasn't done so. So on this alternate ground, the government's position is that the petition should still be denied. My time is growing short, so if there are no further questions, I'll conclude here. Ms. Wo had the burden of establishing her eligibility for asylum, withholding of removal, and cap protection. Substantial evidence supports the agency's determination that she failed to do so. Her petition should, therefore, be denied. Thank you very much. Thank you. And I'm really not suggesting we send you to China. Just a couple of points that I'd like to address. Again, the way this case fits squarely under Lai is, I think, was evident. The petitioner would have had to have this plan that she would have testified indirect, she would not have mentioned these details, and then her plan was to hope that the trial attorney would elicit her information. That's what the court in Lai said, and that simply makes no sense. If she was going to enhance her claim, she would have done this on direct examination, through questions of her counsel. She would not have, the government attorney could have asked five questions and rested, and then this information would have never came out. This is why these omissions cannot support this adverse credibility finding. Number two, I respectfully disagree with the government that we did not cite any case law in respect to the future fear. If the court just reads my brief, I argue that petitioner credibly testified that police went to her home seeking to arrest her, accused her of being an organizer of an illegal Ai Kuan Dao group. Not only that, she introduced members to this group, so she could face more severe consequences for being the leader and organizer. I cite it to two cases. One is INS versus Cardoza-Fonseca that says 10% chance of future persecution establishes well-founded fear. The second case, Marcos v. Gonzalez, 9th Circuit, 2005. Police have targeted the petitioner for arrest, demanding that she surrender herself upon return to China, and this case states that an applicant may demonstrate a well-founded fear of return to her home country through showing that she's been targeted for persecution. And again, if credible, then we have testimony that her co-practitioners were arrested and detained for a lengthy time period and were still under surveillance and home arrest at the time of the hearing and able to work. She is similarly situated, so I would argue there is a 10% chance, or at the very least, the court should remand for the board or the judge to make this finding on their own. When you say at the very least? Well, I mean, if the court wishes to find future fear and grant asylum, we would certainly accept that. Well, we can't grant asylum without discretionary. Right. So then I guess it would need to be remanded for determination of future fear, then. That's not the same, you know. You're confusing two things. One, whether we can grant asylum, and one, whether we can find that the board erred with respect to its finding as to future fear. Yes. I would ask the court to find that the board erred with their finding, the latter, Your Honor. Okay. Thank you. Thank you. Thank you. Thank you both very much. The case just argued will be submitted.
judges: Reinhardt, Wardlaw, Daniel